Eric J. Gitig (SBN 307547)
Sevada Hakopian (SBN 330602)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone:  (213) 689-0404
Facsimile:   (213) 689-0430
Emails:   Eric.Gitig@jacksonlewis.com
          Sevada.Hakopian@jacksonlewis.com

Attorneys for Defendant
SYNCREON TECHNOLOGY (USA) LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GALEAS on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>SYNCREON TECHNOLOGY (USA) LLC; and DOES 1-100,<br><br>Defendants. | Case No.:   2:22-cv-08629<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Notice of Removal; Declarations of Eric J. Gitig and Al Robinson; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:  September 26, 2022 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| USDC CASE NUMBER | 1 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT |
|---|---|---|

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF FRANK GALEAS, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant SYNCREON TECHNOLOGY (USA) LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and remove the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

### SERVICE AND PLEADINGS FILED IN STATE COURT

1. On September 26, 2022, Plaintiff FRANK GALEAS ("Plaintiff") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Los Angeles, entitled *Frank Galeas, on behalf of himself, all others similarly situated, and on behalf of the general public, v. SYNCREON TECHNOLOGY (USA) LLC and DOES 1-100,* Case No.: 22STCV31292, which sets forth the following eight causes of action: (1) failure to pay all straight time wages; (2) failure to pay all overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to adopt a compliant sick pay/paid time off policy; (6) knowing and intentional failure to comply with itemized employee wage statement provisions; (7) failure to pay all wages due at the time of termination of employment; and (8) violation of unfair competition law. As stated in paragraph 23 therein, Plaintiff brought this action on behalf of himself and class consisting of "[a]ll California citizens who are employed or have been employed by Defendant in the State of California as non-exempt, hourly employees during the period of the relevant statute of limitations."

2. Defendant executed Plaintiff's Notice and Acknowledgment of Receipt, accepting service of a copy of the Summons and Complaint on October 27, 2022. (Declaration of Eric J. Gitig ("Gitig Decl.") ¶ 2.) A true and correct copy of the Summons, Complaint, the Notice and Acknowledgement, and other related court documents received by Defendant's counsel are attached as **Exhibit "A"** to the Gitig Declaration.

3. On November 21, 2022, Defendant filed and served an Answer to the Complaint in the Los Angeles Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. (Id. at ¶ 3.) A true and correct copy of Defendant's Answer is attached as **Exhibit "B"** to the Gitig Declaration.

4. As of the date of this Notice of Removal, **Exhibits "A" and "B"** to the Gitig Declaration constitutes all of the pleadings received or filed by the Defendant in this matter. (Id. at ¶ 4.)

## TIMELINESS OF REMOVAL

5. This Notice of Removal has been filed within 30 days after Defendant's counsel executed and returned the Notice and Acknowledgement of Receipt forms on October 27, 2022. (Id. at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). (*Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *Madren v. Belden, Inc.*, No. 12-cv-01706-RMW, 2012 U.S. Dist. LEXIS 91635, at *6 (N.D. Cal. July 2, 2012), *citing Star Varga v. United Airlines*, No. 09-cv-02278-SI, 2009 U.S. Dist. LEXIS 64000, at *8 (N.D. Cal. July 24, 2009) ("removal period began upon execution of the notice and acknowledgement of receipt, even where defendant's agent received summons and complaint more than two weeks earlier"); *see also* California Code of Civil Procedure § 415.30(b).

## VENUE IS PROPER

6. This action was filed in the Superior Court in and for the County of Los Angeles. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. (*See* Gitig Decl. ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 3, 15, 16, and 19.)

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

7. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. (28 U.S.C. § 1332(d)(5).)

9. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant. (*See* 28 U.S.C. §§ 1332(d) and 1453.) Furthermore, Defendant is not a State, State official, or other governmental entity.

### A. The Putative Class Contains More Than 100 Members.

10. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." (28 U.S.C. § 1332(d)(5).)

11. Here, Plaintiff asserts that Defendant has employed "over one hundred (100) Class Members … throughout California during the liability period and who are or have been affected by [Defendant's] policies…" (Complaint at ¶ 26.) Moreover, Defendant's records identify in excess of 100 individuals who, like Plaintiff, have been employed by Defendant as non-exempt employees in the State of California between September 26, 2018 and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between September 26, 2018 and the present is referred to herein as the "Putative Class Period"). (Declaration of Al Robinson ("Robinson Decl.") at ¶ 8.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

### B. None Of The Named Defendants Are Government Entities.

12. Defendant is neither a State, a State official, or any other governmental entity. (Robinson Decl. at ¶ 3.)

### C. Minimal Diversity Is Satisfied Under CAFA.

13. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. (28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14. Citizenship of the parties is determined by their citizenship status at the action's commencement. (*See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).)

15. For individuals, citizenship is determined by a person's domicile. (*Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).) "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." (*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).) While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. (*State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence

on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. (*Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16. Defendant is informed and believes, as alleged by Plaintiff in his Complaint, that Plaintiff was, at the time this action was commenced, and still is, resident and citizen of the State of California. (Complaint at ¶ 16; Robinson Decl. at ¶ 6.)

17. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). (*Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019).) CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." (28 U.S.C. § 1332(d)(10).) This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." (*Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).)

18. With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." (*Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010).) Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. (*Id.*) A corporation can only have one "nerve center." (*Id.* at 93-94.) In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. (*Id.*)

19. At the time Plaintiff filed the Complaint and presently, Defendant has been a limited liability company organized under the laws of the State of Delaware. (Robinson Decl. at ¶ 4.) At all relevant times, Defendant's company headquarters – and thus its principal place of business – has been in the State of Michigan where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendant's high-level officers direct, control, and coordinate and control the company's operations and activities. (Id.) Accordingly, for purposes of removal under CAFA, Defendant is citizen of the States of Delaware and Michigan and is not a citizen of the State of California.[1]

20. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and Michigan.[2] (28 U.S.C. § 1332(d)(2).)

**D.   The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[3]**

21. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. (*See* 28 U.S.C. § 1332(d)(6).) Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the

---

[1] Alternatively, Defendant is also a citizen of the States of Delaware and Michigan based on the states in which its sole member is a citizen. (Robinson Decl. at ¶ 5.)

[2] The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. (28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).)

[3] Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." (Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.) Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. (S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").)

22. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. (*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. (*Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969)).

23. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." (*Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).) Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. (*Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence);

*Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

24.  In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." (135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." (*Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" (*Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. (*Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).)

25.  Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. (*See e.g., Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying

a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26. Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[4] conservatively places an aggregate amount in controversy exceeding **$5,742,880** exclusive of attorneys' fees, interest, and costs, as follows:

---

[4]   *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

### a. Failure to Pay Overtime Wages (Second Cause of Action)

The Complaint alleges that Defendant has had "a continuous policy of not paying Plaintiff and those similarly situated for all hours worked" and that, "as a direct result of Defendant's … uniform policies and/or practices, Plaintiff and the Class Members have suffered and continue to suffer, substantial unpaid overtime wages …" (Complaint at ¶¶ 5, 6, 31, 32, and 63-70.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least five hours of overtime wages per workweek (one hour of overtime per shift) for all Putative Class Members, which would place over $2,178,750 in controversy in connection with his overtime claim ($31.12 overtime rate [$20.75 average hourly rate x 1.5] x 5 hours per week x 14,000 workweeks[5]). (Robinson Decl. at ¶ 9; *see also, e.g.*, *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *11-13 ("Because Plaintiffs allege that 'Defendants maintained a policy and practice of not paying Plaintiffs and the Class for all hours worked, including … overtime wages,' … without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds that Defendant's estimate of 5 hours of overtime wages per workweek… is reasonable.").)

### b. Failure to Provide Meal Periods (Third Cause of Action)

Plaintiff alleges that "[t]hroughout the statutory period, and through uniform policies applicable to all non-exempt hourly employees, [Defendant] failed to provide non-exempt, hourly employees with meal periods that comply with California law …" (Complaint at ¶¶ 5, 7, 31, 32, and 75-92.) Given these purported violations, Plaintiff claims he and the Putative Class Members "have been deprived of premium wages, in amounts to be determined at trial ..." (Id. at ¶ 91.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least five meal period premiums per workweek for all Putative Class Members, which would place over $1,452,500 in controversy in

---

[5] Although the Putative Class Period spans from September 26, 2018 to the present, all calculations used in this Notice of Removal are based on Defendant's records for Putative Class Members during the period of September 26, 2018 to September 14, 2022. (Robinson Decl. at ¶¶ 7-10.)

connection with his meal period claim ($20.75 average hourly rate x 5 meal periods per week x 14,000 workweeks). (Robinson Decl. at ¶ 9; *see also, e.g.*, *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *15-16 (finding the defendant's estimate of five meal period violations per employee per week to be reasonable).)

### c. Failure to Authorize and Provide Rest Periods (Fourth Cause of Action)

Similar to his third cause of action, Plaintiff contends that "[t]hroughout the statutory period, and through uniform policies applicable to all non-exempt hourly employees, [Defendant] … failed to authorize and permit rest periods [to non-exempt, hourly employees] that comply with California law …"." (Complaint at ¶¶ 5, 7, 31, 32, and 96-107.) Given these purported violations, Plaintiff claims he and the Putative Class Members "have been deprived of premium wages, in amounts to be determined at trial ..." (Id. at ¶ 106.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least five rest period premiums per workweek for all Putative Class Members, which would place over $1,452,500 in controversy in connection with his rest period claim ($20.75 average hourly rate x 5 rest periods per week x 14,000 workweeks). (Robinson Decl. at ¶ 9; *see also, e.g.*, *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *15-16 (finding the defendant's estimate of five rest period violations per employee per week to be reasonable).)

### d. Failure to Provide Compliant Wage Statements (Sixth Cause of Action)

For Plaintiff's sixth cause of action, he asserts that Defendant "[t]hroughout the Statutory Period and through uniform policies applicable to all non-exempt, hourly employees, [Defendant] knowingly and intentionally provides wage statements to employees that fail to specifically itemize everything required under California Labor Code section 226(a)." (Complaint at ¶¶ 5, 10, 11, 31, 32, and 122-134.) During the one-year statute of limitations period mandated under Labor Code section 226 (*i.e.*, September 26, 2021 to the present), Defendant has issued in excess of 3,374 bi-weekly wage statements to 139 Putative Class Members. (Robinson Decl. at ¶ 10.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $330,450 in controversy in connection with his wage statement claim (($50 per first wage statement x 139 Putative

Class Members who worked between September 26, 2021 and the present, plus $100 per each subsequent wage statement x 3,235 pay periods worked by Putative Class Members between September 26, 2021 and the present, up to a maximum of $4,000 per Putative Class Member)). (Id.; *see* Labor Code § 226(e)(1); *see also, e.g.*, *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant need only have caused a single violation per pay period for all wage statements to be inaccurate" (citation and internal quotation marks omitted); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").)

### e. Failure to Timely Pay Final Wages (Seventh Cause of Action)

For Plaintiff's seventh cause of action, Plaintiff asserts that "[t]hroughout the Statutory Period and through uniform policies applicable to all non-exempt, hourly employees, [Defendant] knowingly and intentionally failed to pay all wages owed to non-exempt, hourly employees in a timely manner at the time non-exempt hourly employees terminated their employment…" (Complaint at ¶ 5, 12, 31, 32, and 136-146.) Plaintiff further alleges that, "[a]s a consequence of [Defendant's] willful conduct in not paying wages owed at the time of separation from employment, Plaintiff and members of the proposed Class are entitled to thirty (30) days' worth of wages as a penalty under Labor Code section 203 …" Id. at ¶ 145.) During the applicable three-year statute of limitations period (*i.e.*, September 26, 2019 to the present), at least 66 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Robinson Decl. at ¶ 8.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $328,680 in controversy in connection with his claim for waiting time penalties (66 Putative Class Members who separated from their employment with Defendant between September 26, 2019 and the present x $20.75 average hourly rate x 8 hours x 30 days). (Id.; *see also, e.g.*, *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant …

| USDC CASE NUMBER | 13 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT |
|---|---|---|

need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply") (citation and internal quotation marks omitted).)

27. Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid straight time wages, unpaid overtime wages, meal period violations, rest period violations, failure to adopt compliant sick pay/paid time off policy, failure to provide accurate itemized wage statements, and failure to timely pay final wages, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 58-60, 69, 90-91, 106-107, 132-134, 143-146, and pgs. 30-32 Prayer for Relief; *see, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. (*See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." (*Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-

MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

28. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." (*Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

29. The Court should therefore consider attorneys' fees of at least $1,435,720, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 26 above in connection with Plaintiff's putative class claims for unpaid overtime wages, meal period violations, rest period violations, wage statement violations, and failure to timely pay final wages. (*See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

///
///
///
///

30. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **$7,178,600**[6]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

31. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

32. Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  November 28, 2022                         JACKSON LEWIS P.C.

By:     /s/ Eric J. Gitig
Eric J. Gitig
Sevada Hakopian

Attorneys for Defendant
SYNCREON TECHNOLOGY (USA) LLC

4890-6979-6415, v. 2

---

[6] This amount does include potential damages or attorneys' fees for Plaintiff's first and fifth causes of action (failure to pay all straight time wages and failure to adopt a compliant sick pay/paid time off policy), which would further increase the amount in controversy in connection with Plaintiff's putative class claims. Defendant reserves the right to later address the potential amounts in controversy in connection with these claims.